BALTIMORE & O. R. CO. v. LA DUE et al.

(Supreme Court, Appellate Term. February 7, 1908.)

1. CARRIERS—INTERSTATE COMMERCE ACT—CHARGES—CONTRACT RATE—EVIDENCE—PLEADING.

By requiring the fixing and publication of freight rates to be charged by common carriers, the interstate commerce act supplies prima facie evidence of the contract rate, which can only be overcome by averment in avoidance thereof.

2. SAME—REASONABLE CHARGE.

A freight charge made by a common carrier which conforms to the schedule of rates required to be fixed and published by the interstate commerce act is prima facie a reasonable charge.

3. SAME—AGREEMENT AS TO RATES—VALIDITY—BURDEN OF PROOF.

Where, in an action by a carrier against a consignee for freight charges based on the schedule filed with the Interstate Commerce Commission, defendant counterclaimed for prior charges exacted by defendant in excess of the rates fixed by an agreement between the parties, valid before the passage of the interstate commerce act, plaintiff had the burden of showing that the agreement was contrary to the provisions of the act.

4. SAME.

An agreement by a carrier to transport freight at lower rates than those filed with the Interstate Commerce Commission is illegal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 865.]

5. SAME.

Where it appeared that local freight rates had been filed with the Interstate Commerce Commission, but there was no proof that no through rate had been filed, an agreement by a carrier to transport at a rate less than the local rates was not shown to be illegal, though, if no through rate had been filed, the local rate would control.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 865.]

6. SAME.

Where a carrier failed, because of inconvenience or inability, to transport freight to its destination, as required by the contract of shipment, the consignee was entitled to recover of it for extra charges paid another carrier for completing the transportation.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Baltimore & Ohio Railroad Company against Charles La Due and James M. Carmer, doing business under the firm name and

style of La Due & Carmer, to recover freight charges. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and SEABURY and GERARD, JJ.

Cravath, Henderson & De Gersdorff (Edward V. Conwell, of counsel), for appellant.

Coffin & Goldmark (Herbert Goldmark and George C. Coffin, of counsel), for respondents.

PER CURIAM. Plaintiff sued for freight charges on four cars of hay consigned to the defendants, amounting to $233.49. Defendants' counterclaim alleged overcharges for freight on seven previous shipments of hay, which defendants had been compelled to pay under protest, in order to obtain delivery of such hay, amounting to $256.50. The court below gave defendants judgment for the excess of the defendants' counterclaim over plaintiff's claim, with costs. Plaintiff appeals.

The rates charged by plaintiff both for the freight covered by plaintiff's claim and for that covered by defendants' counterclaim were the local rates fixed in schedules of rates filed under the interstate commerce regulation act, and had been continuously in force for six months before such shipments were made. By requiring the fixing and publication of those rates the interstate commerce act supplies prima facie evidence of the contract rate, which can only be overcome by averment in avoidance thereof. Swift v. P. & R. R. Co. (C. C.) 64 Fed. 59. Where the charge conforms to the schedule of rates, it is prima facie a reasonable charge. Kinnavey v. Term. Ass'n (C. C.) 81 Fed. 803. Defendants base their counterclaim on an agreement made by them in the year 1903 with one Purner, the commercial freight agent of the plaintiff, which agreement was not abrogated, but remained in full force when the hay mentioned in the counterclaim was shipped in December, 1905, and January, 1906. Under this agreement plaintiff was to give defendants a "through rate" on all hay shipped by them from Western points, as was the hay mentioned in the counterclaim, and would allow defendants to bill the hay to Green Spring, W. Va., as a "holdover point," and then bring the hay to New York on said "through rate." The plaintiff was to notify defendants at New York when the hay arrived at Green Spring, and the defendants would then designate the point to which they desired the hay to be sent from Green Spring, and the shipment was to be considered a "through shipment" from the point of origin to the point of destination named by defendants when the hay had reached Green Spring. Defendants claim that under this agreement plaintiff shipped the hay at a "through rate" of 27 cents per 100 pounds from certain points and 27½ cents per 100 pounds from certain other points. When, however, the hay arrived at Green Spring, W. Va., said Purner, as plaintiff's agent, notified defendants that "local rates," not "through rates," would be charged. Defendants protested, but were compelled to pay such "local rates" in order to get the hay delivered. Based on "through rates," the charge would have been 27 to 27½ cents per 100 pounds; whereas, "local rates" made the charge

considerably over 27½ per 100 pounds. The difference, as we have seen, constituted defendants' counterclaim, for the excess of which over the plaintiff's claim defendants, as above stated, obtained judgment.

It is not disputed that the hay covered by plaintiff's claim herein was shipped under no specific agreement as to rates, and that the filed rates controlled, and defendants admit their liability for the charge set up in the complaint. The claim set up in the counterclaim seems also to be without contradiction of a specific character. Plaintiff charged rates "made up of a combination of local rates," while, under the agreement above set forth, defendants claim that "through rates" should have been charged. As the agreement made between the parties was legal before the passage of the interstate commerce act, the burden was upon the plaintiff to show that such agreement was contrary to the provisions of the act. There is no doubt that, if the "through rates" alleged to have been agreed upon were less than the "through rates" duly filed with the Interstate Commerce Commission from the respective points of origin to the respective points of designation of the seven shipments of hay, the agreed rates would be illegal and defendants' claim unenforceable (Kinnavey v. Terminal R. Ass'n, 81 Fed. 803); but there is no evidence upon which to base such a finding. The plaintiff failed to show either that there was no "through rate" filed with the Interstate Commerce Commission, in which case the filed "local rates" would control, or that it was different from the agreed rate claimed by defendants, in which case the agreed rate would be illegal. There is no contradiction of defendants' testimony that a lower rate than that charged by the plaintiff was agreed upon between plaintiff and defendants upon all shipments of hay made from the territory embracing Edgerton, Ohio, and Corunna, Ind., nor that this rate was given them as a "through rate." Defendants are not asking the court to designate one of two sets of rates as the proper one and to enforce its application, as claimed by plaintiff's counsel; but they rely on an agreed "through rate," which plaintiff has not shown to have been illegal.

It appears that plaintiff, instead of bringing the hay to New York, as required by its agreement, left some of it at Van Nest and some at Flushing, and that defendants were obliged to pay extra charges to another carrier for bringing the hay to New York, which extra charges were allowed as part of defendants' counterclaim. This was not error; for plaintiff was obliged to carry out its contract, and defendants should not be put to additional charges, not contemplated in the contract, because of the inconvenience to or inability of plaintiff in bringing the hay to New York.

The judgment should be affirmed, with costs.